IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| **CONTRACT FREIGHTERS, INC.** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 04-5088-CV-SW-GAF |
| | ) | |
| **CRST VAN EXPEDITED, INC.,** | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Presently before the Court is Defendant CRST Van Expedited, Inc.'s ("CRST") Motion to Dismiss. (Doc. #8). Also before the Court is Plaintiff Contract Freighters, Inc.'s ("CFI") Countermotion to Enjoin CRST's Prosecution of Second-Filed Action. (Doc. #15). CRST asks this Court to dismiss CFI's first-filed action[1] for declaratory judgment in deference to CRST's second-filed action, which is currently pending in the Northern District of Iowa ("the Iowa action"). CFI asks this Court to exercise its jurisdiction over CFI's first-filed action and enjoin the parties from further prosecuting CRST's second-filed action. Having reviewed the evidence submitted by the parties, CRST's Motion to Dismiss is DENIED and CFI's Motion to Enjoin Prosecution of the Iowa Action is GRANTED.

---

[1] CFI originally filed its petition in the Circuit Court of Jasper County, Missouri, and CRST properly removed the action to this Court.

1

## DISCUSSION

**I.     Facts**

This dispute arose over CFI's hiring of CRST employees who were under employment contracts with CRST at the time CFI hired them. (CRST's Am. Pet.) CFI and CRST are both trucking companies. Id. CRST pays the cost of training its new drivers in return for a commitment from the driver that he or she will work for CRST for a specified period of time. (CRST Sugg. In Supp. Of its Mtn. To Dismiss.)

On October 20, 2003, on information that CFI was considering hiring one or more CRST drivers, CRST's president sent CFI a letter, stating:

> The purpose of this letter is to put you on notice that any interference with this contractual relationship, by hiring new drivers under a one year employment contract with CRST, will be deemed your company's interference with that contractual relationship. If your organization persists on using CRST as a new Driver Recruiting source, you will be required to reimburse CRST for its training costs. CRST will take appropriate legal action to enforce its rights. (CFI Am. Pet. Ex. A).

On November 6, 2003, CFI responded to CRST's letter, citing legal authorities and stating, "CFI's position is that it has legally and properly hired former CRST drivers and is not guilty of any wrongdoing." (CFI Am. Pet. Ex. B). CFI responded on November 26, 2003, reiterating its position that it would "pursue all legal remedies" if CFI "takes affirmative and intentional steps to induce CRST drivers to breach their employment contracts." (CFI Am. Pet. Ex. C). CRST took no legal action following this series of communications. (CFI Sugg. In Opp'n to Pl.'s Mtn. To Dismiss).

On May 10, 2004, CFI faxed CRST a request for the work history of a CRST driver named Loretta Coburn. Id. On May 18, 2004, after CFI hired Loretta Coburn, it received another letter from CRST, which stated, "Please be informed that we intend to pursue all available legal remedies to enjoin any

2

party from interfering with our efforts to enforce the terms of our agreement with [Loretta Coburn]." (CFI Sugg in Opp'n. to Pl.'s Mtn. to Dismiss, CFI Am. Pet. Ex. C). CRST did not pursue legal action with respect to Loretta Coburn.

In June of 2004, CFI inquired about the work history of Kirk Colvin, another CRST driver. On July 15, 2004, after CFI had hired Colvin, CRST sent CFI a letter stating, "If CFI proceeds to hire Kirk Colvin, CRST will seek injunctive relief to stop CFI action of taking advantage of CRST's driver training program. That relief will entail seeking a temporary restraining order, a preliminary and permanent injunction as well as monetary damages."[2] (CFI Am. Pet. Ex. D).

On or about July 28, 2004, approximately two weeks after receiving CRST's letter regarding Kirk Colvin, CFI filed its petition for declaratory judgment in the Circuit Court of Jasper County, Missouri. CFI sought a declaration as to whether its recruitment activities constitute a material interference with CRST's contractual relations or prospective business advantage, and if so, whether such activities are privileged, justified, constitutionally protected, or otherwise not tortious or actionable. (CFI Am. Pet.). On September 8, 2004, CRST properly removed the action to this Court. On September 13, 2004, CRST filed a separate complaint in the Northern District of Iowa alleging that CFI's "purposeful efforts to solicit and hire CRST drivers while those drivers are still under contract with CRST constitutes tortious interference with contract, and tortious interference with prospective business advantage." (CRST Ex. 2). CRST's Iowa complaint expressly referenced CFI's pending suit for declaratory judgment. Id.

---

[2] On July 15, 2004, CRST sent CFI an identical letter regarding Billy Johnson, another CRST employee. However, CFI did not hire Billy Johnson.

CFI argues that, under the "first-filed" rule, this Court should retain jurisdiction and enjoin further prosecution of the Iowa action because CFI filed its action for declaratory judgment first, and this Court properly obtained jurisdiction before the Iowa court obtained jurisdiction. CRST argues that CFI improperly "raced to the courthouse" in order to preemptively secure a Missouri forum. CRST further argues that it, not CFI, is the natural plaintiff, and that because CFI knew that a lawsuit was imminent, it filed in Missouri in order to deprive CRST of its choice of forum.

**II.     Legal Standard**

It is well established that the federal court in which the first-filed action is pending has wide discretion to enjoin the parties from proceeding with a later-filed action in another federal court. Northwest Airlines, Inc. v. American Airlines, Inc., 989 F.2d 1002, 1004 (8th Cir. 1993), *citing* Minnesota Mining and Mfg. Co. v. Rynne, 661 F.2d 722 (8th Cir. 1981). Accordingly, a district court's decision to apply the first-filed rule is reviewed for an abuse of discretion. U.S. Fire Ins. Co. v. Goodyear Tire & Rubber Co., 920 F.2d 487, 489 (8th Cir. 1990).

Although denominated as a "Motion to Dismiss" and a "Countermotion to Enjoin," the crux of the arguments presented by the parties is the application of the "first-filed" rule. CRST's Motion and CFI's Countermotion do not involve the merits of the case, but rather this Court's discretion to exercise jurisdiction and enjoin the parties from proceeding in the Iowa action. Therefore, like other "first-filed" rule cases, this case is not subject to the standards for granting injunctive relief articulated in Dataphase Systems, Inc. v. C.L. Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981) (en banc). *See* Boatmen's First

4

Nat'l Bank v. Kansas Pub. Employees Ret. Sys., 57 F.3d 638, 641 (8th Cir. 1995).[3] The "first-filed" rule is not intended to be rigid, mechanical or inflexible; instead, the first-filed rule is to be applied in a manner best serving the interest of justice. Northwest, 989 F.2d at 1005. A district court must therefore engage in a careful factual analysis before enjoining the parties from prosecuting a second-filed action. *See* Fed. R. Civ. P. 52(a), Boatmen's, 57 F.3d 638, 641 (8th Cir. 1995).

**III.     Analysis**

When multiple lawsuits involving the same parties and subject matter are concurrently pending in more than one federal court, the general rule is that the district court first obtaining jurisdiction over the parties has priority to adjudicate the controversy and should restrain the parties from proceeding in a later filed action. Northwest, 989 F.2d at 1005. When compelling circumstances are present, however, the court first obtaining jurisdiction may refrain from hearing the case and defer to the court where the second action was filed. Id. "A party may demonstrate compelling circumstances by showing that the first action was filed in bad faith, that in the first-filed action the plaintiff raced to the courthouse to avoid litigating in another forum, or that the second action has developed further than the first." Id.

Northwest is analogous to the instant case. Northwest involved Northwest Airlines hiring American Airlines employees. Id. at 1003. American claimed this was actionable, and its general counsel sent Northwest a letter on May 15, 1991 stating, "I have never much fancied being a plaintiff, but you folks may

---

[3] The Dataphase factors regarding whether a preliminary injunction should issue are: 1. the threat of irreparable harm to the movant; 2. the state of the balance between the harm and the injury that granting the injunction will inflict on the other parties litigant; 3. the public interest. Dataphase, 640 F.2d at 113.


drive us to it. Although we are flattered by all the attention, we hope you'll look elsewhere for your staffing needs." Id. On June 6, 1991, Northwest replied to American's letter, disagreeing with American's interpretation of the law. Id. On July 17, 1991, Northwest filed its declaratory judgment action in Minnesota. Id. On August 30, 1991, American filed its suit in the Northern District of Texas, alleging tortious interference and unfair competition, and seeking both damages and injunctive relief. Id.

In Northwest, American Airlines argued that compelling circumstances existed to allow the district court to deviate from the first-filed rule and defer to the district court where the second action was filed. Id. at 1007. American argued that these compelling circumstances were based on an alleged "race to the courthouse," after American's letter threatening litigation, as well as on the fact that Northwest's action sought declaratory relief. Id. The court agreed that these two factors threw up "red flags" and warranted further examination. Id. However, the Eighth Circuit found that the district court had not abused its discretion in finding that no compelling circumstances existed to justify deviating from the first-filed rule; American's letter threatened litigation without indicating that any suit was "imminent" or that American was doing anything more than simply "blowing smoke." Id. The Eighth Circuit agreed with the district court in finding that Northwest did not race to the courthouse because there was no indication that a race was on. Id. Further, American did not file its suit until six weeks after Northwest's declaratory suit, which provided support for Northwest's argument that American never truly intended to file its own suit. Id.

CRST argues that this case is distinguishable from Northwest because the language in CRST's letter regarding Kirk Colvin was more definite than the language in American's letters. CRST argues that its statements that "CRST *will* seek injunctive relief," and that the relief "*will* entail seeking a temporary restraining order, preliminary and permanent injunction as well as monetary damages," should have made

6

it clear to CFI that a lawsuit was imminent; whereas American's statement that "[it has] never much fancied being a plaintiff, but you folks *may* drive us to it" was equivocal. (Emphasis added.) (CRST Reply Sugg. In Supp. Of its Mtn. To Dismiss). While the word "will" is certainly more definite than the word "may," CRST's nine-month history of sending letters threatening litigation belies its claim that it ever truly intended to file suit. CRST never took legal action following any of the letters it had sent in the past, despite the fact that CFI admitted in its November 6, 2003 letter to hiring CRST's employees, and despite the fact that CFI hired Loretta Coburn after CRST threatened to sue. The language used in each of CRST's letter was almost identical; CFI had no reason to "race to the courthouse" in anticipation of an "imminent" suit in response to the Kirk Colvin letter because CFI had no reason to expect that its hiring of Kirk Colvin would be treated any differently than its hiring of Loretta Colburn or any other CRST employee.

Further, as was the case in Northwest, CRST did not file its own suit until a significant amount of time had passed following CFI's filing of its declaratory judgment action. CFI filed its action in state court approximately two weeks after receipt of the Kirk Colvin letter. CRST was served with the petition on August 10. On September 8, CRST removed the case to federal court. On September 13, 2004, more than a month after being served with CFI's petition, CRST filed the Iowa action, which expressly referenced CFI's pending action for declaratory judgment. The fact that CRST waited so long to file its suit, and the fact that its suit expressly references CFI's petition for declaratory judgment serve as further evidence to this Court that CRST had not been preparing to file its own suit, and that CFI therefore did not improperly race to the courthouse.

7

CRST cites to Anheuser-Busch, Inc., v. Supreme International Corp., 167 F.3d 417 (8th Cir. 1999) to support its argument that this Court should dismiss CFI's action because CFI's first-filed action is an attempt at forum-shopping. In Anheuser-Busch, Supreme International Corp. ("Supreme") sent a letter to Anheuser-Busch, Inc., ("Busch") on December 11, 1996, demanding that Busch cease and desist its use of a penguin design in its Bud-Ice campaign and that, unless Busch responded within five days, Supreme had authorized its attorneys to take legal action. Id. at 418. On December 19, 1996, without responding to Supreme's cease and desist letter, Busch filed its action for declaratory judgment. Id. On December 24, 1996, Supreme filed its own suit. Id. at 419. The 8th Circuit found that Supreme's five-day deadline for Busch's response, and its statement that it would take legal action if no response was received within five days clearly indicated that a lawsuit was imminent. Id. In concluding that compelling circumstances existed to justify refusing to apply the first-filed rule, the 8th Circuit noted that Busch did not respond to Supreme's cease and desist letter and filed suit a mere three days after the five-day deadline had passed, thus evidencing a race to the courthouse. Id. Further, the fact that Supreme filed its own suit only five days after Busch filed its declaratory judgment suit indicated that Supreme had indeed intended to file suit prior to Busch's action for declaratory judgment. *See* Id.

The Busch case is easily distinguishable from the instant case. CRST issued repeated threats to CFI which it never acted upon; CRST never informed CFI of any deadline after which it would file suit; CRST waited more than a month after being served with CFI's petition to file its own suit. This Court finds that CRST has failed to present sufficient evidence of "compelling circumstances" which justify deviation from the first-filed rule in this case. There is no evidence to indicate that CFI acted in bad faith in filing suit, or that CFI filed suit in order to deprive CRST of its choice of forum. Rather, the evidence indicates that, after

8

Case 3:04-cv-05088-GAF   Document 25   Filed 09/20/05   Page 8 of 9

nine months of threats from CRST, CFI filed suit in order to ascertain its rights and potential liabilities regarding its hiring of CRST's employees.

## **CONCLUSION**

Because the facts do not show that CFI raced to the courthouse in order to deprive CRST of its choice of forum, and because the facts do not show that CRST's lawsuit was imminent, this Court finds no basis for declining to apply the "first-filed" rule.

Accordingly, it is ORDERED that CRST's Motion to Dismiss is DENIED, and it is FURTHER ORDERED that CFI's Countermotion to Enjoin Prosecution of Second-filed Action is GRANTED.

IT IS SO ORDERED.

/s/ Gary A. Fenner
GARY A. FENNER, JUDGE
United States District Court

DATED: September 20, 2005